STATE of Alaska, Petitioner,

v.

Joanne MARDOCK, Respondent.

No. 1342.

Supreme Court of Alaska.

Nov. 30, 1971.

Keith Brown, Asst. Dist. Atty., Harold W. Tobey, Dist. Atty., Anchorage, G. Kent Edwards, Atty. Gen., Juneau, for petitioner.

James Krendl and Robert C. Erwin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for respondent.

Before DIMOND, RABINOWITZ, and CONNOR, JJ., and LEWIS, Superior Court Judge.

CONNOR, Justice.

This case concerns the constitutional right to speedy trial, as expounded in the opinions in Glasgow v. State, 469 P.2d 682 (Alaska 1970), and Rutherford v. State, 486 P.2d 946 (Alaska 1971).

The superior court dismissed the indictment because a delay of about 15 months had occurred between the time of the indictment and the date set for trial. The state has petitioned for review of the order of dismissal. We granted review because the order affects a substantial right of the petitioner and presents a question of sufficient importance to merit review under our discretionary authority. Green v. State, 462 P.2d 994 (Alaska 1969).

## I

In an indictment returned March 25, 1969, it was charged that respondent, while serving as an officer and employee of Grocer's Wholesale, Inc., embezzled more than $100 from the company. On April 3, 1969, respondent was arraigned and entered a plea of not guilty. She was released to the custody of a psychiatrist. She was later released on her own recognizance by an order dated April 24, 1969.

At the time of her plea respondent requested a pre-trial conference, which the court granted. On April 11, 1969, respondent submitted a pre-trial memorandum. This requested that the court order: a bill of particulars showing the amounts allegedly taken and the dates on which taken; accounting reports by independent auditors, police and others; review of all books and records of the company; certain police and laboratory reports; appointment of an independent auditor to testify as an expert witness on behalf of the court; some restriction on release of information to the news media. It was also suggested in the pre-trial memorandum that trial be scheduled after discovery was completed, and that in the interim the matter should be scheduled monthly for a progress report.

After a pre-trial conference held on April 23, 1969, the court ordered certain discovery on the part of respondent, but the order did not mention respondent's request for a bill of particulars from the state.[1] The pre-trial order also directed respondent to obtain an estimate of the cost of an independent audit. The orders imposed on the state were conditioned on the full disclosure by respondent in advance of trial of all defenses to be offered. On April 25, 1969, the required statement of defense was filed. This statement listed four defenses and concluded that "any other specific defense must await a bill of particulars."[2]

1. The court made the following specific orders:
   "1. Defendant shall obtain an estimate from the firm of Johnson and Morgan of the cost of an independent audit and the per hour cost of testimony of an expert witness. The defendant requests an independent audit be made by a representative of that firm and the appointment of a representative to testify as an impartial and expert witness at the time of trial. In the event the estimated costs are approved by the Administrative Officer of the Alaska State Courts, it is contemplated that an order will be drawn appointing an independent auditor to make the examination.
   "2. Defendant's counsel shall be permitted to examine any written reports of defendant's statements, either oral or written.

   "3. The results of physical tests, such as handwriting analysis or the defendant's handwriting.
   "4. The results of any polygraph tests conducted on defendant or any witness known by the State to be called.
   "5. Witness statements in the control of the State's attorney, including reports of audits."

2. The defenses listed by respondent were as follows:
   "1. She did not take any money from Grocer's Wholesale.
   "2. There was in fact no actual loss.
   "3. That some other person was responsible for the entries, making it appear there was a loss.
   "4. The financial records of Grocer's Wholesale were altered over objection of the defendant to disclose greater income

On May 28, 1969, respondent moved to declare indigency. This sworn motion included requests for: 1) permission to take certain depositions, 2) issuance of a subpoena duces tecum requiring production of numerous accounting records, 3) appointment of an independent auditor, and 4) appointment of counsel.

Apparently no action was ever taken on the motion to declare indigency. However, on May 9, 1969, the court ordered that all documents mentioned in the pre-trial order of April 23, 1969, be delivered within ten days. Respondent's April 11, 1969, request for the appointment of an independent auditor was denied on the ground that the estimate had not been approved by the Administrative Director of Courts because of lack of funds. According to the May 9, 1969, order, the case was continued in pre-trial status.

Between May 9, 1969, and February 3, 1970, there was no further action in this case. On the latter date counsel for respondent wrote to the court requesting that respondent be allowed to leave Alaska on vacation from March 16 through March 30, 1970.

On February 13, 1970, the court set the matter for trial the week of June 22d. During the hearing concerning the setting of trial, counsel for respondent indicated that there were still motions pending in the matter. Counsel specifically mentioned the matter of appointment of an independent auditor and the request to take depositions. The court directed that the pending motions be taken up on morning call during the next week.

On February 17, 1970, the case was assigned for trial before Judge Davis. As a result of a peremptory challenge by the state, the matter was reassigned to Judge Moody on February 24, 1970.[3] Respondent filed an affidavit for the peremptory disqualification of Judge Moody, and the matter was ultimately assigned to be tried before Judge Occhipinti.

An order was signed on March 6, 1970, permitting respondent to leave the state on vacation between March 16 and March 30, 1970.

On June 4, 1970, respondent filed a motion requesting a continuance of the trial date. In the memorandum in support of the motion it was pointed out that no action had been taken on the detailed requests in the motion to declare indigency, and further that the state had never provided a bill of particulars. A hearing on the motion was held on June 18, 1970, at which time respondent stressed the failure of the state to provide the bill of particulars. The trial was continued for 30 days and the court set a hearing on all pending motions for the following week before Judge Occhipinti. The trial was set for the week of July 27, 1970.

On June 23, 1970, respondent moved for a dismissal of the indictment for failure to have a speedy trial, basing the motion on the decision of this court in Glasgow v. State, *supra.* Almost 15 months had elapsed between the arraignment of respondent and the original trial date of June 22, 1970.

Following a hearing before Judge Occhipinti on July 1, 1970, the motion to dismiss was granted on July 9, 1970. In the order of dismissal the court concluded that the "delay in bringing the defendant to trial was not caused by counsel for the state or by counsel for the defendant, but was due to an unexplained administrative delay on behalf of the court and * * * the defendant has been, in fact, denied a speedy trial. * * *"

---

than the actual income and such records were used to obtain credit from a national bank in Seattle, and the alleged loss is an attempt to account for the changes made."

3. The notice of trial by jury before Judge Davis was given on either February 20 or February 23.

## II

We find this case indistinguishable in any significant respect from that of Rutherford v. State, *supra*. There this court held that a delay of 14 months in bringing a defendant to trial, even though the prosecution was not responsible for the delay, nevertheless violated the right to speedy trial, as guaranteed by the Alaska Constitution.[4] Furthermore, the great bulk of the delay in Rutherford occurred before our decision in Glasgow v. State, *supra,* which declared a delay of 14 months, attributable to the state, to be excessive and, therefore, a deprivation of the right to speedy trial. In *Rutherford* the *Glasgow* standard was applied retroactively.

In the case before us it is noteworthy that respondent, at the very outset of the formal prosecution, proceeded with dispatch to bring about discovery and to move for relief which would have served to bring about a trial within a reasonably prompt period of time.

That so much time elapsed between indictment and the date set for trial, with several motions and requests by the respondent still not acted upon, does not from the record appear to be the fault of respondent. Perhaps it is not possible to know with certainty the real cause of the delays which took place here. As the trial judge noted, something went wrong with the process under which respondent should have been brought to trial at a much earlier date.

Under the authority of the *Glasgow* and *Rutherford* cases, we must hold that respondent was denied her right to speedy trial. She is entitled to the retroactive application of the *Glasgow* standards. The action of the superior court in dismissing the indictment was correct.

The order below is affirmed.

4. Alaska Constitution, Art. 1, Sec. 11, provides: "In all criminal prosecutions, the accused shall have the right to a speedy and public trial * * *."